1   SCOTT N. SCHOOLS (SC 9990)
    United States Attorney
2   JOANN M. SWANSON (CSBN 88143)
    Chief, Civil Division
3   MELANIE L. PROCTOR (CSBN 228971)
    Melanie.Proctor@usdoj.gov
4   Assistant United States Attorney

5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
6       Telephone: (415) 436-6730
        FAX: (415) 436-6927
7
    Attorneys for Defendants
8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11
    VICTOR VOLOVNIKOV,                    )    No. C 07-3607 EDL
12                                        )
                        Plaintiff,        )
13                                        )
                v.                        )
14                                        )
    Department of Homeland Security,      )    DEFENDANTS' MOTION TO DISMISS
15  MICHAEL CHERTOFF, Secretary;         )    AND REMAND
    U.S. Citizenship and Immigration Services, )
16  EMILIO T. GONZALES, Director; U.S.   )    No Hearing by Stipulation and Court Order
    Citizenship and Immigration Services, )
17  ROSEMARY MELVILLE, San Francisco     )
    District Director; United States Attorney )
18  General, MICHAEL B. MUKASEY;*        )
    ROBERT S. MUELLER, III, Director of the )
19  Federal Bureau of Investigation,     )
                                          )
20                      Defendants.       )
                                          )
21  ─────────────────────────────────────

22                    **I.  NOTICE OF MOTION**

23          PLEASE TAKE NOTICE THAT Defendants Michael Chertoff, et al., by their attorneys,

24  Scott N. Schools, United States Attorney for the Northern District of California, and Melanie L.

25  Proctor, Assistant U.S. Attorney, hereby move this Court to dismiss Defendants Mukasey and

26  Mueller, and to remand this matter to the agency.  Defendants' Motion is based on this notice, the

27

28  *Pursuant to Fed. R. Civ. P. 25(d)(1), Michael B. Mukasey is substituted for his predecessor,
    Alberto Gonzales, as the United States Attorney General.

points and authorities in support of this motion, the attachments to this motion, and the pleadings on file in this matter.

## II.    INTRODUCTION

This is a complaint and application for a hearing on Plaintiff's application for naturalization, brought under 8 U.S.C. § 1447(b).  The Court has two options under § 1447(b).  First, the Court can decide the merits of Plaintiff's naturalization application.  Alternatively, the Court can "remand the matter, with appropriate instructions," to the United States Citizenship and Immigration Services ("USCIS") to adjudicate the petition.

As explained below, the USCIS is awaiting the results of the requisite name check, which remains pending with the Federal Bureau of Investigation ("FBI").  Defendants suggest that the appropriate course is for this Court to remand the matter to USCIS with instructions instead of attempting to render its own decision on Plaintiff's application based upon an incomplete record.

## III.    STATEMENT OF FACTS

Plaintiff filed an application for naturalization on March 14, 2005 with USCIS.  Declaration of Randall Ricks, Senior Adjudications Officer, USCIS, (attached as Exhibit A), p.4 ¶ 13.  He was interviewed by the USCIS on August 3, 2005.  Id.  On August 7, 2007, USCIS requested an expedite of the FBI name check.  Id.  USCIS cannot decide Plaintiff's naturalization application until all background checks have been completed, and until any and all issues that might arise from those checks have been resolved.  Id.

## IV.    ANALYSIS

A.    LEGAL BACKGROUND

1.    Naturalization

The Secretary of the Department of Homeland Security ("DHS") has "sole authority to naturalize persons as citizens of the United States."  8 U.S.C. § 1421(a).  To qualify for the privilege of citizenship, an applicant must satisfy a variety of requirements, including the requirement of establishing that during all relevant times, he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."  8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a)(7).  The

1    applicant must also establish that he has "has resided continuously, after being lawfully admitted

2    for permanent residence, within the United States for at least five years . . . ." 8 U.S.C. § 1427(a).

3    Additionally, "[b]efore a person may be naturalized, and employee of the Service, or of the United

4    States designated by the Attorney General,[1] shall conduct a personal investigation of the person

5    applying for naturalization . . . . " 8 U.S.C. § 1446(a); see also 8 C.F.R. § 335.1 ("Subsequent to

6    the filing of an application for naturalization, the Service shall conduct an investigation of the

7    applicant. The investigation shall consist, at a minimum, of a review of all pertinent records.").

8    Title 8, United States Code, Section 1447(b) provides that if USCIS fails to grant or deny a

9    citizenship application within 120 days after the date "on which the examination is conducted under"

10    § 1446, an alien applicant may obtain a hearing on the matter in district court.

11    Before a decision is rendered on an alien's application to naturalize, USCIS, in conjunction

12    with the FBI, conducts several forms of security and background checks to ensure that the alien is

13    eligible for the benefit sought and that he is not a risk to national security or public safety. See Exh.

14    A, p. 2 ¶ 3. USCIS also conducts investigations into the bona fides of petitions and applications that

15    have been filed, in order to maintain the integrity of the application process and to ensure that there

16    is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing "direct and continuous

17    liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency

18    and with other internal security officers of the Government for the purpose of obtaining and

19    exchanging information for use in enforcing the provisions of this chapter in the interest of the

20    internal and border security of the United States").

21    These checks currently include: (1) an FBI name check, which is run against FBI

22    investigative databases compiled by law enforcement agencies including administrative, applicant,

23    criminal, personnel and other files; (2) an FBI fingerprint check, which provides information relating

24    to criminal background within the United States; and (3) a check against the Interagency Border

25

26

27    [1]On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for adjudication of naturalization applications.

28    6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

Inspection System ("IBIS"), which contains records and information from more than 20 federal law enforcement and intelligence agencies, and is used to compile information regarding national security risks, public safety concerns, and other law enforcement concerns. See Exh. A, p. 2 ¶ 4. Congress has mandated that the agency withhold adjudication until the necessary background checks are complete:

> [D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed . . . .

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L. 105-119, 111 Stat. 2440, 2448-49 (emphasis added).

2.    Name Checks

The name checks performed by the FBI at the request of USCIS consist of reviews of FBI investigative records from the FBI's Central Records System. As stated in the declaration of Michael A. Cannon, Section Chief of the FBI's National Name Check Program Section:

> The National Name Check Program ("Program") has the mission of disseminating information from the FBI's Central Records System in response to requests submitted by federal agencies, congressional committees, the federal judiciary, friendly foreign police and intelligence agencies, and state and local criminal justice agencies. The Central Records System ("CRS") contains the FBI's administrative, personnel, and investigative files.

See Declaration of Michael Cannon, p. 2 ¶ 4 (attached as Exhibit B). The FBI's Central Records System includes the investigative records relating to the hundreds of federal violations over which the FBI has investigative jurisdiction, and it includes information on subjects, suspects, victims, witnesses and close relatives and associates who are relevant to an investigation. See Doe v. FBI, 936 F.2d 1346, 1348 n.2 (D.C. Cir. 1991) (explaining that the Central Records System is the FBI's central filing system, containing the agency's investigative records on various individuals and subject matters); Exh. B, pp. 2-6 ¶¶ 5-12.

Thus, if during the course of an FBI criminal or intelligence investigation, the FBI obtains relevant information regarding an individual, and such information is included in a written report,

such information will be found in an investigative file in the FBI's Central Records System. For example, during the course of an investigation into drug trafficking, the FBI may be told by an informant that a certain alien is involved in transporting illegal drugs. That information may be included in a report of the FBI agent's interview with the informant. That report would be placed in the investigative file, which is part of the Central Records System. If that alien subsequently seeks to adjust his status, and if USCIS requests a name check, the FBI would likely locate that information through a search of the Central Records System and report that derogatory information to USCIS.

Criminal history record information, such as records of arrests and convictions, is separate and distinct from the raw investigative reports and other types of investigative information contained in the FBI's Central Records System. Criminal history record information is contained in systems of records other than the Central Records System, such as the Fingerprint Identification Records System ("FIRS") and the Interstate Identification Index System ("III System"), which is accessible through the National Crime Information Center ("NCIC"). See 28 C.F.R. § 20.3(l)-(n) (defining the FIRS, the III System, and the NCIC, respectively, for purposes of the regulations regarding exchange of criminal history record information); and 28 C.F.R. § 20.33 (discussing the dissemination of criminal history record information); see also http://www.fbi.gov/hq/cjisd/ncic_brochure.htm (describing the NCIC) (last visited Nov. 7, 2007). Thus, to continue the hypothetical cited in the previous paragraph, where an alien was alleged to be involved in drug trafficking, it may be that the alien was never arrested. In that situation, a search of only a criminal history record would result in no records, whereas the name check would return the record.

As explained by Mr. Cannon, 68 percent of all USCIS-initiated name checks are returned within 48-72 hours as having no record. Exh. B, p. 6 ¶ 13. After the second stage of the process in conducted, that percentage rises to an overall 90 percent "no response" rate. Id., pp. 6-7 ¶ 14. Thus, the remaining 10 percent are identified as possibly being the subject of an FBI record. Id., p. 7 ¶ 15. At that point, the FBI record must be retrieved and reviewed, which may require retrieving paper files. Id.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B.    <u>DEFENDANTS MUKASEY AND MUELLER SHOULD BE DISMISSED</u>

Courts in this district have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. <u>See</u> 6 U.S.C. §§ 271(b)(5), 557; <u>Konchitsky v. Chertoff</u>, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); <u>Dmitriev v. Chertoff</u>, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007). Accordingly, the only relevant Defendant here are those within the Department of Homeland Security, and Defendants Michael B. Mukasey and Robert S. Mueller should be dismissed.

C.    <u>THE CASE SHOULD BE REMANDED TO THE AGENCY</u>

Defendants contend that where there are serious issues concerning Plaintiff's eligibility for naturalization, the Court should remand the matter to the agency. The courts of this country have long and consistently recognized that non-citizens are not entitled to United States citizenship as a matter of right unless all applicable statutory requirements are satisfied. <u>United States v. Ginsberg</u>, 243 U.S. 472, 475 (1917); <u>Friend v. Reno</u>, 172 F.3d 638, 647 (9th Cir. 1999). As the party seeking to obtain "all the advantages of citizenship, . . . it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." <u>Berenyi v. District Director, Immigration and Naturalization Service</u>, 385 U.S. 630, 637 (1967); <u>United States v. Nunez-Garcia</u>, 262 F. Supp. 2d 1073, 1086 (C.D. Cal. May 20, 2003); 8 C.F.R. § 316.2(b).

A district court, like any federal court, has only such limited jurisdiction as is granted by the Constitution or Congress. <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994) Although 8 U.S.C. § 1447(b) grants the district courts exclusive jurisdiction over Plaintiff's naturalization application under the current circumstances, <u>Hovsepian</u>, 359 F.3d at 1160, it does not follow that the requirements for obtaining citizenship are diminished or suspended. Consequently, Plaintiff bears the burden of establishing his eligibility for citizenship to this Court in the same manner as he did to the USCIS. <u>Berenyi</u>, 385 U.S. at 637; <u>see also</u> <u>Friend</u>, 172 F.3d at 647 (noting that district court does not have discretion to ignore a disqualifying factor and grant citizenship). Further, in view of the burden of proof, if this Court would have any doubt as to Plaintiff's qualifications for citizenship, such doubts should be resolved against him. <u>Berenyi</u>, 385 U.S. at 671;

1    United States v. Manzi, 276 U.S. 463, 467 (1928) ("Citizenship is a high privilege, and when doubts

2    exist concerning the grant of it, generally at least, they should be resolved in favor of the United

3    States and against the claimant").

4          Plaintiff bears the burden of demonstrating that he "has been and still is a person of good

5    moral character, attached to the principles of the Constitution of the United States, and well disposed

6    to the good order and happiness of the United States." 8 U.S.C. § 1427(a)(3). Here, the required

7    background investigation is not complete, placing him in the small category of individuals whose

8    name checks require more intense review. See Exh. A, p. 4 ¶ 13; Exh. B, p. 15 ¶ 41; see also Eldeeb

9    v. Chertoff, 2007 WL 2209231, at *5 (M.D. Fla. July 30, 2007). Accordingly, Defendants suggest

10   that it would be prudent to exercise this Court's remaining option under § 1447(b), which is to

11   remand the matter to the USCIS with instructions.

12         In Stepchuck v. Gonzales, No. C06-570, 2006 WL 3361776 (W.D. Wash. Nov. 17, 2006),

13   three plaintiffs filed a motion for summary judgment seeking naturalization under 8 U.S.C.

14   § 1447(b). 2006 WL 3361776 at *1. Two of the plaintiffs asserted that they had met all the

15   requirements for naturalization. Id. at *4. In response, the Government contended that their

16   background checks were not yet complete, and that there were genuine issues of material fact about

17   their eligibility for naturalization. Id. The plaintiffs asserted that because they had been

18   interviewed, the background check must have been complete. Id. at *5. The court took note of the

19   background investigation requirements, and observed:

> When faced with the situation here, where the background check has not been
> completed within 120 days of the examination interview, the majority of courts have
> remanded the application to USCIS to complete the background investigation.

22   Id. at *5, citing Khelifa v. Chertoff, 433 F. Supp. 2d 836, 843 (E.D. Mich. 2006) and El-Daour v.

23   Chertoff, 417 F. Supp. 2d 679, 683 (W.D. Penn. 2005). Thus, the district court concluded that

24   remand was appropriate, instructing USCIS to adjudicate the two plaintiffs' applications "as quickly

25   as possible once their full background checks [were] complete." Id. at *6; see also Deng v. Chertoff,

26   No. 06-7697 SI, 2007 WL 1501736 (N.D. Cal. May 22, 2007) (remanding to agency for adjudication

27   once necessary background checks are complete).

28         In Shalabi, the plaintiff was interviewed on his naturalization application on January 6, 2004,

DEFENDANTS' MOTION
C 07-3607 EDL                              7

prior to completion of his background investigation. <u>Shalabi v. Gonzales</u>, 2006 WL 3032413, at *2 (E.D. Mo. Oct. 23, 2006). The Government sought dismissal of the action, or in the alternative, remand to the agency. <u>Id.</u> at *1. The district court noted that "the executive branch is given great deference in immigration matters." <u>Id.</u> at *4. Furthermore, the court observed:

> More specifically, a district court, like USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security or public safety. . . . <u>To conduct a hearing without the completion of a background check</u> "would contravene Congress's intent that an FBI background check is to be completed prior to the adjudication of every naturalization application."

<u>Id.</u> (citations omitted) (emphasis added). The court also declined to set a specific deadline for a determination on the plaintiff's application. <u>Id.</u> at *5. The district court remanded the case to USCIS "with instructions to . . . make a determination <u>as expeditiously as possible</u> after the completion of Shalabi's criminal background investigation." <u>Id.</u> at *6 (emphasis added).

Defendants suggest that this Court is faced with a similar situation. The results of Plaintiff's background check not yet been received, suggesting that he falls in the narrow 10% of USCIS name check requests requiring more intense review. <u>See</u> Exh. B, p. 15 ¶ 41. In light of the situation underlying the case at hand, it would seem prudent to follow the example of the district courts in <u>Stepchuck</u>, and <u>Shalabi</u>, and remand Plaintiff's application to USCIS. Furthermore, Defendants respectfully suggest that the Court refrain from setting a time limit on adjudication. <u>See</u> <u>Mechanic v. DHS</u>, 2007 WL 580780, at *2 (S.D. Tex. Feb. 20, 2007).

## V.    CONCLUSION

Based upon the foregoing discussion, Defendants respectfully ask the Court to dismiss Defendants Mukasey and Mueller, and suggest that the Court should remand this matter to USCIS for adjudication upon completion of the requisite background investigation.

Dated: November 20, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

/s/
MELANIE L. PROCTOR
Assistant U.S. Attorney
Attorneys for Defendants