Carrie L. Rosenbaum, Cal. Bar #236582
Jewish Family & Children's Services
2534 Judah Street
San Francisco, CA 94122
Tel. (415) 449-2900
Fax (415) 449-2901
Email: CarrieR@jfcs.org

Attorneys for Victor Volovnikov

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Victor Volovnikov, <br><br> Plaintiff, <br><br> vs. <br><br> Department of Homeland Security, MICHAEL CHERTOFF, Secretary; U.S. Citizenship and Immigration Services, EMILIO T. GONZALES, Director; U.S. Attorney General, MICHAEL MUKASEY; United States Citizenship and Immigration Services, ALFONSO AGUILAR, Chief; United States Citizenship and Immigration Services, ROSEMARY MELVILLE, District Director; ROBERT S. MUELLER, III, Director of the Federal Bureau of Investigation, <br><br> Defendants. | Civil No. C 07-3607 EDL <br><br> **PLAINTIFF'S REPLY AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO REMAND** <br><br> Judge: The Honorable Elizabeth D. Laporte |

I.    INTRODUCTION AND PROCEDURAL POSTURE ........................................... 5

II.        RELEVANT FACTS .................................................................................. 5

III.       ARGUMENT ............................................................................................ 7

    A.    This Court Has Jurisdiction To Consider Applications For Naturalization And Should Not Remand It To The USCIS For Further Unspecified And Unjustified Delays. ............................................................................................................... 7

    B.    In The Interest Of Justice And Upholding Congress' Intent In Creating The Immigration And Nationality Act, This Court Should Adjudicate Plaintiff's Naturalization Application. ......................................................................................... 9

        1.    Plaintiff Falls In The Group Of 1%, Not 10% Or More As Indicated By Defendants, Whose FBI Record Results May Reveal Adverse Information. 10

        2.    Plaintiff Has Shown That He Qualifies For Naturalization, Is A Person Of Good Moral Character, And Defendants Have Not Demonstrated Any Serious Issues Pertaining To His Naturalization Application. ....................... 11

        3.    Plaintiff Is Not Asking This Court To Ignore Any Disqualifying Factors And Adjudicate And Grant His Naturalization Application Because There Are No Disqualifying Factors ........................................................................ 12

    C.    Contrary To Defendants' Representations, 6 U.S.C. § 271(B)(5) Does Not Indicate That This Court Should Dismiss Attorney General Mukasey, And FBI Director Mueller As Defendants. ................................................................................ 13

    D.    Delays In The Name Of National Security Interests And The USCIS's Large Caseload Are Not Justifiable Or Recognized Legal Grounds For A Delay Of This Magnitude Under The Circumstances. ................................................................. 15

IV.      CONCLUSION ....................................................................................... 18

**Cases**

*Astafieva v. Gonzales*, No. 06-04820, 2007 U.S. Dist. LEXIS 28993 (D. Cal. 2007)....................9

*Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 637 (1967) ...........................................................................................................................................13

*Dmitriev v. Chertoff*, No. C06-7677 JW, 2007 WL 13119533, at *4 (N.D. Cal. May 4, 2007) ...14

*Dmitriev v. Chertoff,* No. C-07-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007)....16

*Dong v. Chertoff*, -- F. Supp. 2d --, 2007 WL 2601107, at *4 (N.D. Cal. Sept. 6, 2007).............17

*El-Daour v. Chertoff*, 417 F. Supp. 2d 679, 681-83 (W.D. Pa. 2005) ........................................10

*Etape v. Chertoff,* [8/2/07, ___ F.3d ___] No. 06-01916 (4th Cir. 2007) .......................................9

*Friend v. Reno*, 172 F.3d 638, 674 (9th Cir. 1999)........................................................................13

*Friend*, 172 F.3d at 674..................................................................................................................14

*Friend,* 175 F.3d at 641..................................................................................................................13

*Gelfer v. Chertoff et al.,* 2007 WL 902382 at *3 (N.D. Cal. March 22, 2007) ............................17

*Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400 (E.D. Pa. 2007)....................................................15

*Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400-01 (E.D. Pa. Apr. 16, 2007) ................................16

*Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007) ...........................................................................................................................................14

*Konchitsky,* No. C-07-00294 RMW (N.D. Cal. July 13, 2007).....................................................15

*Lifshaz v. Gonzales*, No. 06-1470, 2007 U.S. Dist. LEXIS 28946 (W.D. Wash. 2007)...............10

*Paunescu v. I.N.S.*, 76 F. Supp. 2d 896, 903 n.2 (N.D. Ill. 1999).................................................16

*Shalan v. Chertoff*, No. 05-10980, 2006 U.S. Dist. LEXIS 253 (D. Mass. 2006)........................10

*Shalibi v. Gonzales,* 2006 WL 3032413, at *2 (E.D. Mo. Oct. 23, 2006) ....................................18

*Singh v. Still* 470 F.Supp.2d 1064, 1068 (N.D. Cal. 2007) ..........................................................16

*Tang v. Chertoff*, 493 F. Supp. 2d 148, 156 (D. Mass. Jun. 26, 2007) ........................................18

*Toor v. Still*, 2007 WL 2028407, at *2 (N.D. Cal. 2007).............................................................17

*U.S.A. v. Hovsepian,* 359 F.3d 1144, 1151 (9th Cir. 2004)..................................................................8

*Walji v. Gonzales*, 489 F.3d 738 (5th Cir. 2007) ..................................................................17

*Wang v. Gonzales et al.,* 2007 U.S. Dist. LEXIS 92357, *9 (N.D. Cal. December 17, 2007)......17

*Yu v. Brown* 36 F.Supp. 2d 922, 934 (D.N.M. 1999)..................................................................16

**Statutes**

28 U.S.C. § 1331..................................................................13

28 U.S.C. § 2201..................................................................7

28 U.S.C. §1331..................................................................6

5 U.S.C. § 701 *et seq*..................................................................13

5 U.S.C. §701 *et seq*..................................................................6

6 of U.S.C. § 271(b)(5) ..................................................................12

6 U.S.C. § 271(b)(2)..................................................................13

6 U.S.C. §271(b)(5)..................................................................12

8 U.S.C. § 1447(b) ..................................................................6, 7, 13

8 U.S.C. §1447(b)..................................................................15

8 USC §1447(b) ..................................................................4

Federal Rule of Civil Procedure 8(b)..................................................................4

U.S.C. § 271(b)(5)..................................................................12

**Other Authorities**

135 Cong. Rec. H4539-02, H4542 (1989) ..................................................................14

H.R. Rep. No. 101- 187, at 8 (1989)..................................................................14

**Immigration and Nationality Act**

INA §244(a)(1) ..................................................................5

## I. INTRODUCTION AND PROCEDURAL POSTURE

Plaintiff Victor Volovnikov ("Plaintiff"), by and through his undersigned counsel, files this Opposition to Defendants' Motion to Dismiss and Remand Plaintiff's Petition to Naturalize. Defendants do not base their Motion to Remand and Dismiss on Federal Rule of Civil Procedure 12. In other words, they do not claim that Plaintiff has failed to state a claim upon which relief could be granted, nor that this Court lacks subject matter jurisdiction. In their motion, the Defendants concede that this Court has jurisdiction over Plaintiff's petition to naturalize (Defendants' Motion, page 2). However, Defendants request that this Court remand Plaintiff's case to the United States Citizenship and Immigration Services ("USCIS") rather than make a ruling on the petition. Plaintiff respectfully asks this Court to deny the Defendants' Motion to Dismiss and Remand and grant his naturalization application, or in the alternative, conduct a hearing to determine whether Plaintiff's application to naturalize should be granted.

According to Federal Rule of Civil Procedure 8(b), Defendants were to state their defenses to each claim asserted in their Opposition. The claim asserted by Plaintiff in the Petition to Naturalize is that USCIS has failed to adjudicate Plaintiff's application pursuant to 8 USC §1447(b) and that this Court therefore has the jurisdiction to adjudicate the application, and should adjudicate the application. Failure to adjudicate the application in court would contravene the purpose of the statute. Defendants have not denied the validity of the claim pursuant to Federal Rule of Civil Procedure 8(b), nor this court's authority to hear the case. Defendants have also not asserted any affirmative defenses pursuant to Federal Rule of Civil Procedure 8(c).

## II. RELEVANT FACTS

The Plaintiff does not contest the relevant facts as set out in the Defendants' Motion to Remand. As the Defendants' motion explains, the Plaintiff has been a lawful permanent resident

1  of the United States for almost ten years.  He filed his application for naturalization on March 15,
2  2005 and was interviewed on August 3, 2005. (Plaintiff's Petition to Naturalize, hereinafter
3  "Plaintiff's Petition.")  Background checks were initiated on March 25, 2005. (See Declaration
4  of Randall Ricks, page 4.)  At the conclusion of the interview the Plaintiff was informed that he
5  had passed the examination but that a final decision could not yet be made on his application.
6  (Plaintiff's Petition.)  Plaintiff's naturalization application and related FBI name check have been
7  pending for approximately thirty-two months, and over two years have passed since his
8  interview. (Plaintiff's Petition.)

9      Plaintiff first entered the U.S. on or about February 18, 1990 on a tourist visa. (Declaration of
10 Victor Volovnikov.)  Shortly after entering the U.S., he applied for political asylum, withholding
11 of removal and relief pursuant to the Convention Against Torture. (Id.)  In 1994, four years after
12 his asylum office interview, former INS informed him that his application had been denied and
13 he was referred to immigration court. (Id.)  Plaintiff through the assistance of an attorney applied
14 for former suspension of deportation pursuant to INA §244(a)(1). (Id.)  In 1998, Plaintiff was
15 granted suspension of deportation. (Id.)  In order to qualify for suspension of deportation,
16 Plaintiff had to prove, in part, that he was a person of good moral character. INA §244(a)(1).
17 Plaintiff complied with requests to complete fingerprinting and biometrics procedures at each
18 stage of these processes.  He was subject to background checks at least twice before applying for
19 naturalization – once when he applied for political asylum and related relief, and again when he
20 applied for suspension of deportation.

21     The naturalization application filed by Plaintiff represents his fourth time presenting himself
22 to USCIS for background checks.  Whatever applications he has filed that have resulted in
23 background checks have been approved.  The Plaintiff presented himself to USCIS subjecting
24 himself to background security checks when he applied for adjustment of status.  USCIS granted
25 him permanent resident status on January 13, 1998.

On March 15, 2005 the Plaintiff applied for naturalization. Despite having had three previous background investigations in connection with application to USCIS, the adjudication of his naturalization application has been unduly delayed. Plaintiff contends that there is no reason to believe that there would be a different result now whenever his FBI name check would be completed. Defendants have had over two years to perform the background checks, and to date, the FBI name check has not been completed. Plaintiff has been deprived of privileges of U.S. citizenship including: the right to vote, serve on a jury, expeditiously sponsor immediate relatives abroad for permanent residence, receive business and education loans and benefits reserved for citizens, or travel abroad and return to the U.S. without fear of exclusion.

## III. ARGUMENT

### A. This Court Has Jurisdiction To Consider Applications For Naturalization And Should Not Remand It To The USCIS For Further Unspecified And Unjustified Delays.

The Defendants' Motion to Dismiss and Remand describes the procedure for considering applications for naturalization. Defendants suggest that this Court should remand the case to USCIS instead of rendering a decision. Plaintiff contends that it would be futile, and contrary to the plain language of the statute, to remand the case to the USCIS. A naturalization application shall be adjudicated by the federal district court if USCIS fails to make a decision on the application within 120 days of the date of examination (interview). 8 U.S.C. § 1447(b)[1]. *See, e.g., U.S.A. v. Hovsepian,* 359 F.3d 1144, 1151 (9th Cir. 2004) (treating the initial interview date as the trigger for the 120-day period for § 1447(b)). USCIS has not made a determination and

---

[1] 8 U.S.C. §1447(b) Request for hearing before district court: If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

**Plaintiff's Reply to Defendants' Motion to Remand, C 07-3607 EDL**　　　　　　　　　　　　7

the 120-day period has more than expired, triggering this court's jurisdiction over the case and giving Plaintiff a proper remedy. [2]

USCIS has failed to make a decision on the application within 120 days of the interview; therefore, this Court should adjudicate the application. While this court does not have jurisdiction until 120 following the initial naturalization interview, after that point, "§1447(b) vests the district court with exclusive jurisdiction" which "furthers the twin congressional goals of streamlining the process but retaining applicants judicial rights and ability to choose the forum that will adjudicate their applications." *Etape v. Chertoff,* [8/2/07, ___ F.3d ___] No. 06-01916 (4th Cir. 2007). Congress included §1447(b) (in the 1990 legislation) to ensure that applicants had judicial recourse when the UCIS failed to act. This court "

The Plaintiff petitioned this Court for a hearing on his naturalization application after waiting almost two years after his interview, far more than the 120 days indicated by the statute, without a decision by USCIS. Under the statute, he is entitled to either a determination by the judge or an order remanding the case to USCIS with appropriate instructions. 8 U.S.C. § 1447(b). Defendants request that this Court remand the case to the USCIS with instructions, (Defendants' Motion, page 2) however, Plaintiff contends that upon remand, the case will continue to remain unadjudicated, indefinitely, as confirmed by Michael A. Cannon, the Section Chief of the National Name Check Program Section at the Federal Bureau of Investigation. (See Declaration of Michael A. Cannon, page 14, ¶ 39.) Plaintiff requests this Court make a determination on the naturalization application as it is empowered to do so by 8 U.S.C. § 1447(b).

In a recent case decided in this district, district court Judge James Ware retained jurisdiction of a naturalization case that remained pending due to FBI name check delays. *See Astafieva v. Gonzales*, No. 06-04820, 2007 U.S. Dist. LEXIS 28993 (D. Cal. 2007). In *Astafieva*, the judge

---

[2] This Court also has subject matter jurisdiction over the Petition pursuant to 28 U.S.C. §1331 (federal question), 5 U.S.C. §701 *et seq.* (Administrative Procedure Act), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

reviewed the redacted FBI records and allowed the government to reveal its classified information *in camera*. *Id.* After reviewing all the information, the judge found that it did not provide good cause for delaying the plaintiff's naturalization, and he ordered that the plaintiff be naturalized. *Id.* The judge took into account the security interest involved in a case with a pending FBI name check without causing further delay of the naturalization application. This case compels district court adjudication more than in the *Astafieva* case because to date, no records have been produced even suggesting any records would exist in response to the FOIA.

In a similar decision, the District Court for the Western District of Washington applied a balancing test in *Lifshaz v. Gonzales*, No. 06-1470, 2007 U.S. Dist. LEXIS 28946 (W.D. Wash. 2007), to determine the appropriate outcome of whether to adjudicate the naturalization application or remand to USCIS. The court weighed the government's interest in public safety and national security and Mr. Lifshaz's individual interest in having his naturalization application adjudicated. The court noted that it was "disturbed by the possibility that a determination on Mr. Lifshaz's naturalization application will be endlessly delayed," as is Plaintiff's concern here. *Lifshaz, citing El-Daour v. Chertoff*, 417 F. Supp. 2d 679, 681-83 (W.D. Pa. 2005). The *Lifshaz* court determined that it was appropriate to conduct a hearing to avoid further delay and granted him citizenship. *See also: Shalan v. Chertoff*, No. 05-10980, 2006 U.S. Dist. LEXIS 253 (D. Mass. 2006) (scheduling a hearing instead of remanding the case to USCIS). Thus in keeping with these decisions, it is appropriate for this court to retain jurisdiction and adjudicate Plaintiff's application instead of remanding to USCIS where Plaintiff is assured nothing other than further delay.

    **B. In The Interest Of Justice And Upholding Congress' Intent In Creating The Immigration And Nationality Act, This Court Should Adjudicate Plaintiff's Naturalization Application.**

The Defendants state that USCIS is unable to adjudicate the Plaintiff's naturalization application at this time because his FBI name check is still pending. While this may be true, they

misrepresent the necessity of the name checks under the circumstances, and their Motion omits a critical fact. The security or procedure-related reasons for remanding the case to the USCIS are based on speculation and are without merit.

### 1. Plaintiff Falls In The Group Of 1%, Not 10% Or More As Indicated By Defendants, Whose FBI Record Results May Reveal Adverse Information.

The Defendants suggest via a hypothetical, having no bearing on the Plaintiff, if:

> "an alien was alleged to be involved in drug trafficking, it may be that the alien was never arrested. In that situation, a search of only a criminal history record would result in no records, whereas the name check would return the record." (Defendants' Motion, page 5.)

The Defendants have provided no basis to believe that this hypothetical is anything other than a hypothetical and, the likelihood of this hypothetical becoming a reality is, by the Federal Bureau of Investigation's own statistics, so slim as to be irrelevant. This hypothetical is insufficient to support the argument that Plaintiff should be further denied the rights and privileges of a U.S. citizen. Less than one percent of USCIS requested name checks conducted by the FBI result in possible negative data that may, or may not be grounds to deny an applicant his or her right to naturalize. (Declaration of Michael A. Canon, page 1, ¶ 17.)

Defendants cite the Declaration of Michael A. Cannon, Section Chief of the National Name Check Units of the FBI stating that the remaining 10 percent of record checks not cleared in 48-72 hours are "identified as *possibly* being the subject of an FBI record." (Defendants' Motion, page 5.) Mr. Cannon states that record checks cleared in 48-72 hours have "no record," meaning that the FBI Universal Index database "contains no identifiable information regarding a particular individual." (Declaration of Cannon, page 6, ¶ 13.) What the Defendants' brief omits, is 2 paragraphs later in Cannon's Declaration, at paragraph 17 where he definitively states:

> "Less than **one percent** of USCIS's requests are identified with a file containing *possible* derogatory information." (Declaration of Michael A. Cannon, page 7, ¶ 17.) (Emphasis added in bold and italics.)

**Plaintiff's Reply to Defendants' Motion to Remand, C 07-3607 EDL**     10

Finally, within this one percent where "possible" adverse information exists, the existence of a record as a result of FBI name checks is far from conclusive with respect to whether there is adverse information in the record pertaining to that individual that would or should prevent naturalization. Merely being "the subject" of an FBI record does not necessarily mean that the individual is guilty of behavior prohibiting them from having their naturalization application favorably adjudicated. Therefore, it is safe to say that less than one percent of USCIS applicants where background checks have not been completed are ineligible for the benefit sought. The Defendant is disingenuous in bolstering the perception of a negative record where the checks do not clear in 48-72 hours, and in omitting the infinitesimally small number of possible adverse records in a case like Plaintiff's where there is a one percent chance of a negative record resulting from the FBI checks.

In support of their argument that this case should be remanded to the USCIS to wait for the completion of the FBI background checks, Defendants cite Exhibit B, p. 15, paragraph 41, at page 8 of their Motion:

> "The results of Plaintiff's background check [have] [sic] not yet been received, suggesting that he falls in the narrow **10%** of USCIS name check requests requiring more intense review." (Emphasis added.)

However, paragraph 41, of page 15 of Exhibit B, Cannon's Declaration makes no mention of this "10%." Defendants' statement is inaccurate and contrary to the record. The accurate percent within which Plaintiff falls is 1%, as is indicated by Cannon, and does not warrant a remand to USCIS for further delays pending the final outcome of the FBI record checks.

### 2. Plaintiff Has Shown That He Qualifies For Naturalization, Is A Person Of Good Moral Character, And Defendants Have Not Demonstrated Any Serious Issues Pertaining To His Naturalization Application.

Defendants assert that "where there are serious issues concerning Plaintiff's eligibility for naturalization, the Court should remand the matter to the Agency." (Motion, page 6.) Defendants however, do not assert that there are "serious issues" concerning *this* Plaintiff's

eligibility to naturalize. Moreover, Defendants imply that because the background checks are not done, Plaintiff is in the small category of people "whose name checks require more intensive review." (Defendants' Motion, page 7.) However, Defendants do not explain why this indicates that Plaintiff has not demonstrated that he "has been and still is a person of good moral character" (Defendants' Motion, page 7), nor why the delay suggests his case should be remanded to an Agency that has already failed in its duty to adjudicate the application.

Plaintiff agrees with Defendants that the burden is on him to follow the proper procedures to demonstrate his eligibility to naturalize, including demonstrating that he is a person of good moral character. Plaintiff has made a good faith effort to do everything in his power to demonstrate his eligibility to naturalize, including demonstrating that he is a person of good moral character.

### 3. Plaintiff Is Not Asking This Court To Ignore Any Disqualifying Factors And Adjudicate And Grant His Naturalization Application Because There Are No Disqualifying Factors.

Finally, Defendants suggest that the district court does not have discretion to "ignore a disqualifying factor and grant citizenship," citing *Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 637 (1967); and, *Friend v. Reno*, 172 F.3d 638, 674 (9th Cir. 1999) [3]. (Motion, page 6.) However, Plaintiff is not asking this Court to ignore a disqualifying factor, and Defendants do not cite any factor that would disqualify Plaintiff from naturalizing and becoming a U.S. citizen.

Moreover, in *Friend*, *supra.,* the Ninth Circuit Court of Appeals addressed an entirely different issue than the one here. Friend had contended that his father's residence in the Philippines should qualify as residence in the U.S. for the purposes of derivative citizenship, but

---

[3] In *Friend*, the Ninth Circuit Court of Appeals addressed an entirely different issue than the one here. In that case, the Petitioner was trying to secure naturalization (as a defense to removal) in spite of a legal error indicating that he was not eligible to naturalize. The Court found that "Once the district court held as a matter of law that Friend did not meet one of the strict requirements for citizenship, it did not have discretion to rule that the error did not qualify as an illegality that would permit revocation of the certificate."

**Plaintiff's Reply to Defendants' Motion to Remand, C 07-3607 EDL**                          12

former INS disagreed and initiated removal proceedings. The district court ruled in favor of Friend, and the Ninth Circuit Court of Appeals reversed on the grounds that the law did not support a finding that Friend had derived citizenship. *Friend,* 175 F.3d at 641. The district court had found that as a matter of law, Friend had not met one of the "strict requirements" for citizenship. It was in that specific context that the Ninth Circuit held that the district court did not have discretion to rule that the "error did not qualify as an illegality that would permit revocation of the certificate." *Friend*, 172 F.3d at 674. Unlike Friend, Plaintiff has a legally valid claim to U.S. citizenship. He is not ineligible to naturalize as a matter of law, and Defendants have presented no evidence that would disqualify him from naturalizing.

### C. Contrary To Defendants' Representations, 6 U.S.C. § 271(B)(5) Does Not Indicate That This Court Should Dismiss Attorney General Mukasey, And FBI Director Mueller As Defendants.

Defendants state that pursuant to 6 U.S.C. § 271(b)(5), 557; *Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); *Dmitriev v. Chertoff*, No. C06-7677 JW, 2007 WL 13119533, at *4 (N.D. Cal. May 4, 2007). Defendants Mukasey and Mueller should be dismissed because DHS has been the agency responsible for implementing the INA since 2003. The INS was split up into different agencies for efficiency purposes in 2003. The purpose of the section of the U.S. Code cited by Defendants articulated initiatives for "backlog elimination," and do not remove the liability of the Attorney General (hereinafter "AG") and the Director of the FBI as Defendants. 6 U.S.C. §271(b)(5). Defendants' contention that the AG and the Director of the FBI should not be named Defendants is ironic, because the very purpose of the section of the U.S. Code cited was to prevent the existing backlogs, arguably, in part by increasing accountability to applicants for immigration benefits. Title 6 of U.S.C. § 271(b)(5) reads in relevant part:

> "(5) Pilot initiatives for backlog elimination: The Director of the Bureau of Citizenship and Immigration Services is authorized to implement innovative pilot initiatives to eliminate any remaining backlog in the processing of immigration benefit applications,

**Plaintiff's Reply to Defendants' Motion to Remand, C 07-3607 EDL**                                                     13

and to prevent any backlog in the processing of such applications from recurring, in accordance with section 1573(a) of title 8. Such initiatives may include measures such as increasing personnel, transferring personnel to focus on areas with the largest potential for backlog, and streamlining paperwork.

(b) Transfer of functions from Commissioner: In accordance with subchapter XII of this chapter (relating to transition provisions), *there are transferred from the Commissioner of Immigration and Naturalization to the Director of the Bureau of Citizenship and Immigration Services the following functions*, and all personnel, infrastructure, and funding provided to the Commissioner in support of such functions immediately before the effective date specified in section 455: (1) Adjudications of immigrant visa petitions. (2) Adjudications of naturalization petitions. (3) Adjudications of asylum and refugee applications. (4) Adjudications performed at service centers. (5) All other adjudications performed by the Immigration and Naturalization Service immediately before the effective date specified in section 455. (Emphasis added.)

Thus 6 U.S.C. § 271(b)(5) transfers the functions formerly of the Commissioner of former INS to the Director of BCIS, including but not limited to, adjudications of naturalization petitions. 6 U.S.C. § 271(b)(2). Nowhere in this section is there any indication, explicit or implicit, that the AG and Director of the FBI are functionally immune from lawsuits requesting this Court to adjudicate naturalization applications where USCIS has failed in its responsibilities. Even if Defendant was correct, that "the Department of Homeland Security has been the agency responsible for *implementing* the Immigration and Nationality Act," (Defendants' Motion, page 6), that has no bearing on whether the AG or FBI Director can be sued in their official capacities in a petition to naturalize case. Both the AG and FBI Director are directly responsible for the adjudication of naturalization applications filed with the USCIS and are accordingly, properly named as Defendants for their failure to carry out their duties.

In support of the proposition that the AG and FBI Director should be dismissed, Defendants cite *Konchitsky,* No. C-07-00294 RMW (N.D. Cal. July 13, 2007), an unpublished decision. The *Konchitsky* court did not hold that the AG could be dismissed as a Defendant, but only that the FBI Director, in that specific factual and procedural context, could be dismissed. *Konchitsky*, Order, page 10. The *Konchitsky* court cites *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400 (E.D.

Pa. 2007) where the FBI was found to have a nondiscretionary duty to process name checks based on a reading of several congressional enactments. *Konchitsky*, supra, page 9.

*Konchitsky* is procedurally and factually distinguishable from this case. *Konchitsky* refers to a mandamus action in an adjustment of status case delayed due to name checks. The relevant law at issue in that case is not 8 U.S.C. § 1447(b) which gives this Court jurisdiction to consider this petition to naturalize, but instead concerned 28 U.S.C. § 1331; the Mandamus Act, 28 U.S.C. § 1361; and the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq*. Therefore, the *Konchitsky* decision, even if it were published, would not be analogous to the present case and should have no bearing on the outcome of this case. Similarly, *Dmitriev v. Chertoff,* No. C-07-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007), cited in Defendants' Motion, also concerns a mandamus, not a petition to naturalize case, and is an unpublished decision.

Moreover, even if Plaintiff's case did not arise out of a statutory cause of action, and instead was based on the APA the FBI is still a proper defendant to this action because that agency has a mandatory duty to adjudicate any background or name check requested by the USCIS in conjunction with adjudicating an application to adjust status (Form I-485), or as is the case here, a naturalization application (N-400). *See Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400-01 (E.D. Pa. Apr. 16, 2007). Because the FBI has that mandatory duty to act pursuant to the APA and its contract with USCIS, the FBI must conduct the name check requests within a reasonable period of time. The FBI's failure to act is relevant to this lawsuit making them a proper party. *Kaplan,* at 401.

**D. Delays In The Name Of National Security Interests And The USCIS's Large Caseload Are Not Justifiable Or Recognized Legal Grounds For A Delay Of This Magnitude Under The Circumstances.**

The "mere invocation of national security is not enough to render agency delay reasonable per se." *Singh v. Still* 470 F.Supp.2d 1064, 1068 (N.D. Cal. 2007). Furthermore, delays of a significant magnitude, particularly when they occur over "uncomplicated matters of great

importance to the individuals involved," may not be justified merely by assertions of overwork, and, a delay of over two and a half years in processing an adjustment application is on its face, an unreasonable amount of time to process a routine application and requires an explanation. *Yu v. Brown* 36 F.Supp. 2d 922, 934 (D.N.M. 1999). The USCIS cannot shift responsibility for its breach of duty to the Plaintiff to the FBI, just because the USCIS has contracted out the task of completing security and background checks to the FBI. *Paunescu v. I.N.S.*, 76 F. Supp. 2d 896, 903 n.2 (N.D. Ill. 1999); *See also Gelfer v. Chertoff et al.,* 2007 WL 902382 at *3 (N.D. Cal. March 22, 2007) (holding that a more than two year delay in processing I-485 application unreasonable as a matter of law); *Wang v. Gonzales et al., 2*007 U.S. Dist. LEXIS 92357, *9 (N.D. Cal. December 17, 2007) (finding that a delay of over four years is presumptively unreasonable, particularly where the government has made no showing of any special circumstances that would rebut the presumption of unreasonableness, compelling adjudication.) The Fifth Circuit Court of Appeals held in *Walji v. Gonzales*, 489 F.3d 738 (5th Cir. 2007), "Virtually unbounded time to respond to naturalization applications, is contrary to the intended purpose of Congress in passing the Immigration and Nationality Act. A central purpose of the statute was to reduce the waiting time for naturalization applicants. H.R. Rep. No. 101- 187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542 (1989) (statement of Rep. Morrison)." This Court should similarly uphold the INA and honor Congress' intent and not foster an environment where naturalization applicants are forced to wait limitless periods for adjudication on their applications.

    National security is a counter-intuitive reason to defend an unreasonably long delay in adjudicating Plaintiff's naturalization application. If the delay in determining Plaintiff's background checks and delay in deciding his application were a national security concern Defendants would logically *expedite*, rather than *delay*, adjudication of his application, as he has now been lawfully residing in the United States for several years while the application has been

pending. *See, e.g., Dong v. Chertoff*, -- F. Supp. 2d --, 2007 WL 2601107, at *4 (N.D. Cal. Sept. 6, 2007), at *10 (calling the defendants' allusion to national security concerns a "red herring" because "[t]he plaintiffs are currently living and working in the United States. If there is some legitimate national security concern with them or other applicants currently living and working in the country, this surely militates in favor of prompt security checks, not in favor of delay."); *Toor v. Still*, 2007 WL 2028407, at *2 (N.D. Cal. Jul. 10, 2007) at *2 ("[C]onsidering the fact that most applicants will be physically present in the United States, [a lengthy delay] seems antithetical to national security interests."); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 156 (D. Mass. Jun. 26, 2007) ("As plaintiffs point out, they are already living and working in the United States while the application is pending."). If the delay in adjudicating Plaintiff's application legitimately triggered a national security threat, the more logical way to address the concern would be to complete the process and finalize determination on Plaintiff's eligibility.

Finally, Defendants' cite *Shalibi v. Gonzales,* 2006 WL 3032413, at *2 (E.D. Mo. Oct. 23, 2006) to suggest that USCIS, and not this court, should adjudicate Plaintiff's application. Defendants' rationale in suggesting USCIS should adjudicate in lieu of the court is based on two ideas: 1) the executive branch is given great deference in immigration matters, and 2) the district court is not, like USCIS, in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. Plaintiff contends that while the executive branch is given great deference in immigration matters, it's power is not limitless. The executive's power in immigration matters is still subject to accountability to the people, including lawful residents seeking to naturalize, hence Congress' legislating to protect people similarly situated to Plaintiff from unreasonable delays. This accountability and protection was precisely the purpose of the creation of a remedy in the district courts pursuant to 8 U.S.C. §1447(b), for naturalization applicants facing unreasonable delays.

The entire purpose of the creation of 8 U.S.C. §1447(b) was to create a mechanism for review once the 120 days has based. To remand to the Agency would be to ignore the purpose of the statute under the circumstances.

Contrary to Defendants' implications, Plaintiff acknowledges that this court can do what the FBI can as far as conducting criminal background checks. However this court is empowered to conduct an evidentiary hearing to determine whether Plaintiff's individual interest in having his application adjudicated, under the circumstances, outweighs the government's interest in public safety and national security.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendants' motion to remand the Plaintiff's naturalization application to USCIS, and deny Defendants' request to dismiss the Attorney General and Director as Defendants.

January 8, 2008                             Respectfully submitted,

                                            /s/
                                            Carrie L. Rosenbaum
                                            Jewish Family & Children's
                                            Services
                                            2534 Judah Street
                                            San Francisco, CA 94122