IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR VOLOVNIKOV, | No. C-07-03607 EDL |
| Plaintiff, | **ORDER CONDITIONALLY GRANTING DEFENDANTS' MOTION TO REMAND** |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | |
| Defendant. | |

On July 12, 2007, Plaintiff filed a Petition for Hearing Naturalization Application, seeking a judicial determination of his naturalization application. On November 20, 2007, Defendants filed a Motion to Dismiss or Remand, seeking an order remanding the case to the USCIS for determination of the naturalization application. Briefing is complete, and this matter is appropriate for decision without oral argument.

**Facts**

On March 14, 2005, Plaintiff filed his application for naturalization with United States Citizenship and Immigration Services ("USCIS"). See Compl. ¶ 9. On August 3, 2005, Defendants examined Plaintiff on his application in San Francisco. See id. ¶ 10. Plaintiff was told that he passed the examination, but that a decision could not be made on his application. See id. ¶ 11.

Plaintiff has made at least two written requests to USCIS regarding the adjudication of his application. See Compl. ¶ 12; Volovnikov Decl. ¶ 10. He received responses on April 14, 2006, February 22, 2007 and March 8, 2007 indicating that USCIS was waiting for completion of security checks. See Volovnikov Decl. ¶ 10. On May 11, 2007, Plaintiff's counsel sent a letter to the District Director indicating that Plaintiff would file this Petition unless his case was adjudicated within thirty days. See Compl. ¶ 12. Plaintiff received no response to this letter. See id. As of the

signing of Plaintiff's declaration on January 8, 2008, there had been no indication from USCIS as to when his application would be adjudicated. See Volovnikov Decl. ¶ 11. On August 7, 2007, USCIS requested that the name check be expedited. See Ricks Decl. ¶ 13.

**Legal Standard**

If USCIS fails to adjudicate a citizenship application within 120 days after the date on which the examination is conducted under § 1446, here, August 3, 2005, an applicant may obtain a hearing in district court or the court may order remand. See 8 U.S.C. § 1447(b) ("If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."). The examination referred to in § 1447(b) is the initial interview scheduled under 8 U.S.C. § 1446. See United States v. Hovsepian, 359 F.3d 1144, 1160 (9th Cir. 2004) (stating that the interview date is the trigger for the 120-day period under § 1447(b)); see also Khelifa v. Chertoff, 433 F. Supp. 2d 836, 841-42 (E.D. Mich. 2006) ("Accordingly, the Court concurs in the weight of authority holding that the 120-day statutory decisionmaking period commences when an applicant "appear[s] in person before a Service officer" as provided in the CIS regulation that governs examinations, 8 C.F.R. § 335.2.").

On March 1, 2003, the Department of Homeland Security ("DHS") and USCIS assumed responsibility for adjudication of naturalization applications. See 6 U.S.C. § 271(b). To obtain citizenship, an applicant must satisfy several requirements, including the requirement of establishing that he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a)(7). The applicant must also show that he has "resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . ." 8 U.S.C. § 1427(a). Before granting a naturalization application, the government must conduct a personal investigation of the applicant consisting of, at a minimum,

2

review of all pertinent records. See 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. During this process, USCIS, in conjunction with the FBI, conducts several security and background checks, including a name check. See Ricks Decl. ¶ 4. Adjudication of the naturalization application must be withheld pending completion of the necessary background checks:

> During fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed . . . .

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L. 105-119, 111 Stat. 2440, 2448-49.

The name check consists of reviews of FBI investigative records from the FBI's Central Records System. The National Name Check Program "has the mission of disseminating information from the FBI's Central Records System in response to requests submitted by federal agencies, congressional committees, the federal judiciary, friendly foreign police and intelligence agencies and state and local criminal justice agencies. The Central Records System contains the FBI's administrative, personnel, and investigative files." Cannon Decl. ¶ 4. The Central Records System consists of "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." See id. ¶ 5. There are four stages involved in completion of a name check: batch processing, name searching, file review and dissemination. See id. ¶ 14. This process is conducted under a first-in, first-out policy. See id. ¶ 18. The name check program has grown from 2.5 million name check requests per year prior to September 11, 2001 to over 3.4 million name checks processed in fiscal year 2006. See id. ¶ 21. The increase in name check requests is one factor leading to the delay in processing. See, e.g., id. ¶ 26.

**Discussion**

More than 120 days have passed since Plaintiff's examination on August 3, 2005, so this Court has jurisdiction. The Court may "either determine the matter or remand the matter with appropriate instructions, to [CIS] to determine the matter." 8 U.S.C. § 1447(b).

Defendants argue that the Court should exercise its discretion to remand to the agency with instructions. See, e.g., Lecky v. Gonzales, 2007 WL 1813644, *1-2 (N.D. Cal. June 22, 2007)

3

(Illston, J.) ("The Court finds it appropriate to remand this action to USCIS because that agency has considerably more expertise than the Court in adjudicating naturalization petitions."); Stepchuck v. Gonzales, 2006 WL 3361776, *5 (W.D. Wash. Nov. 17, 2006) (remanding where USCIS did not act within 120 days of interview: " When faced with the situation here, where the background check has not been completed within 120 days of the examination interview, the majority of courts have remanded the application to USCIS to complete the background investigation."); Khelifa, 433 F. Supp. 2d at 844 ("Moreover, the Court shares the widespread judicial concern and frustration that agency action on naturalization applications is unduly delayed in too many cases, including this one, by protracted FBI background checks that take months or even years to complete. Nonetheless, under the circumstances presented here, the Court deems it more prudent to allow CIS the opportunity to determine Plaintiff's entitlement to citizenship in the first instance."); Shalabi v. Gonzales, 2006 WL 3032413, *2 (E.D. Mo. Oct. 23, 2006) (remanding for adjudication of naturalization application: "As discussed above, the executive branch is generally given great deference in immigration matters. More specifically, a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security or public safety."); El-Daour v. Chertoff, 417 F. Supp. 2d 679, 683-84 (W.D. Penn. 2005) (remanding petition for naturalization where agency had not acted within 120 days: "Yet the very reason that the CIS did not process El-Daour's application within 120 days of his examination prevents me from deciding his application. The FBI has not yet completed the criminal background check. This is a vital piece of information. A court is not equipped to conduct such an investigation. I do not have the resources at my disposal to determine whether El-Daour presents a risk to national security or to public safety.").

By contrast, Plaintiff argues that the Court should hold a hearing to examine the government's classified information and grant the plaintiff's naturalization application. See Astafieva v. Gonzales, 2007 U.S. Dist. LEXIS 28993 (N.D. Cal. Apr. 2. 2007); Lifshaz v. Gonzales, 2007 U.S. Dist. LEXIS 28946 (W.D. Wash. 2007) (stating that: ". . . the Court is not equipped to conduct the kind of investigation required to determine whether an applicant presents a risk to

4

national security or public safety. [citation omitted].  Nevertheless, the Court is disturbed by the possibility that a determination on Mr. Lifshaz's naturalization application will be endlessly delayed. Mr. Lifshaz is "understandably anxious to complete the naturalization process so he can fully enjoy the benefits of United States citizenship." [citation omitted].  Considering both the Government's interest in public safety and national security and Mr. Lifshaz's individual interest in having his naturalization application adjudicated, the Court concludes that it is appropriate to hold an evidentiary hearing on whether Mr. Lifshaz should be naturalized. Defendants do not even attempt to distinguish this case, they just point to the longer line of cases ordering remand.").

Defendants have provided no explanation, aside from the general backlog of name check requests with the FBI, as to why Plaintiff's application in particular has not been adjudicated.  On this record, there does not appear to be any reason why Plaintiff's application is more difficult to process than any other application.  However, while the Court is sympathetic to the fact that resolution of Plaintiff's application has been inexplicably delayed, the Court does not have particular expertise in conducting background checks or adjudicating naturalization applications.  It would be preferable for the agencies promptly to carry out their responsibilities to identify problematic information, if any, about the applicant and determine whether the information reflects national security concerns. See Khelifa, 433 F. Supp. 2d at 844.

Accordingly, the Court conditionally remands this matter to the USCIS for a prompt adjudication of Plaintiff's naturalization application.  The Court reserves jurisdiction and will conduct a status conference on June 3, 2008 at 10:00 a.m. if USCIS still has not completed its adjudication of Plaintiff's naturalization application.  The parties shall file a joint status conference statement no later than May 27, 2008.

**Dismissal of FBI Director Mueller and Attorney General Mukasay**

Defendants seek to dismiss Defendants Mukasey and Mueller, arguing that DHS is the agency responsible for adjudicating naturalization applications, so the Attorney General and the FBI Director are not proper Defendants.  Since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act.  6 U.S.C. §§ 271(b)(5), 557.  Thus, the Director of the Federal Bureau of Investigation is not a proper defendant

5

in this case. See Konchitsky v. Chertoff, 2007 WL 2070325, *6-7 (N.D. Cal. July 13, 2007) (granting motion to dismiss Director Mueller: "The court concludes that, while this court has jurisdiction over USCIS with regard to Konchitsky's I-485 application, there is no similar basis for this court to mandate action by the FBI."); but see Kaplan v. Chertoff, 481 F. Supp. 2d 370, 400-01 (E.D. Pa. 2007) (finding that the FBI has an implicit mandatory duty where "Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks . . . ."). Similarly, Attorney General Mukasey is not a proper defendant. See Astafieva, 2007 U.S. Dist. LEXIS 28993, * 4 (dismissing FBI Director and Attorney General as Defendants).

     Plaintiff argues that Konchitsky is factually distinguishable because it was a mandamus action. However, just as the Konchitsky court dismissed Director Mueller on the grounds that there was no basis for the court to mandate action by the FBI to adjust the plaintiff's status, the statutes governing adjudication of naturalization applications do not give authority to the FBI or the Attorney General to act on those applications. Plaintiff also argues that because § 271(a)(5) permits USCIS to implement initiatives aimed at backlog reduction, accountability should be increased by allowing his case to proceed against Director Mueller and Attorney General Mukasey. Section 271(a)(5), however, addresses elimination of backlog through processing of immigration benefit applications, which is not at issue here. Accordingly, Defendants' motion to dismiss Defendants Mueller and Mukasey is granted.

**IT IS SO ORDERED.**

Dated: March 6, 2008

ELIZABETH D. LAPORTE
United States Magistrate Judge